**SOO LINE RAILROAD COMPANY,
individually and on behalf of the
State of Minnesota, Plaintiff,**

**v.**

**B.J. CARNEY & COMPANY,
et al., Defendants.**

**No. CIV. 4–95–908.**

United States District Court,
D. Minnesota,
Fourth Division.

Nov. 6, 1997.

Wayne G. Popham, Hinshaw & Culbertson, Minneapolis, MN, Wayne C. Serkland, Soo Line Railroad Co., Minneapolis, MN, for plaintiff.

Gerard M. Nolting and Delmar R. Ehrich, Faegre & Benson, Minneapolis, MN, for defendants.

### MEMORANDUM OPINION AND ORDER

TUNHEIM, District Judge.

Soo Line Railroad Company, individually and on behalf of the State of Minnesota ("Soo Line"), is prosecuting this action against B.J. Carney & Company and a number of related defendants (collectively "Carney") for various losses and costs associated with hazardous waste contamination on Soo Line's property. Soo Line originally brought claims under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 6901, *et seq.*, and the

Minnesota Environmental Response and Liability Act ("MERLA"), Minn.Stat. §§ 115B.01, *et seq.*, and pursuant to a number of Minnesota common-law theories.

Carney now moves the Court for summary judgment on Soo Line's MERLA claims for alleged economic losses. Soo Line opposes Carney's motion, moves for summary judgment on the same issue, and moves this Court to reconsider the portion of its previous order granting Carney's motion for summary judgment on all common-law claims. These motions came before the Court at a hearing on October 17, 1997. For the reasons set forth below, Carney's motion is granted, and Soo Line's motions are denied.

## BACKGROUND

From 1923 to 1973, Soo Line leased the Humbolt Yard property ("Soo Line site") in Minneapolis, Minnesota, to Carney. Carney owned an adjoining piece of property now known as the Walker Lumber property ("Walker site"). During the leasehold period, Carney was the sole operator of a single pole-treating facility on the Soo Line site and the adjoining Walker site.

It is undisputed that Carney shut down this pole-treating operation by 1973. After Carney had removed its equipment, Soo Line inspected the Soo Line site and determined the premises had been satisfactorily restored in accordance with the terms of the leases. Since 1973, no pole treating has occurred on the Soo Line or Walker sites.

The Soo Line site was placed on the United States Environmental Protection Agency's Comprehensive Environmental Response, Compensation and Liability Information System ("CERCLIS") inventory on January 1, 1982. CERCLIS is a matter of public record. The site was listed under the name of B.J. Carney, and Soo Line claims it had no actual knowledge of the listing.

On May 10, 1982, the Minnesota Pollution Control Agency ("MPCA") sent a letter to Soo Line requesting it gather information about the Soo Line site and other properties. Soo Line responded to the MPCA's request in a memorandum dated May 25, 1982, indicating a visit to the site had revealed nothing unusual.

Shortly thereafter, Soo Line was sued for contamination at another wood-treating site, known as the National Pole Yard, located in Fridley, Minnesota. The case was commenced in 1980, and Soo Line was brought in as a third-party defendant in 1983. In 1984, Soo Line was found liable on various claims.

On June 26, 1986, the MPCA conducted a preliminary assessment of the Soo Line site. Soo Line contends it did not have actual knowledge of contamination of the site until 1988, when it undertook to sell the property. It commenced this action in 1992, alleging Carney's pole-treating operations caused releases of various hazardous substances that ultimately contaminated the Soo Line site.

The parties filed cross motions for summary judgment in 1994. In a memorandum opinion and order dated March 31, 1995, the Honorable Michael J. Davis, held, *inter alia,* that Soo Line's common-law claims are time-barred under the applicable statute of limitations. In so holding, Judge Davis stated as follows:

> Soo Line's state law claims began to accrue at the time it knew or should have known of the property damage caused by the wood treating operation on the site. Defendants argue Soo Line knew or should have known of its damage in May 1982, when it was notified by the MPCA of its concerns regarding waste disposal at the site, as well as other properties owned by Soo Line. This court agrees. The corporation was the only operator on the site, therefore Soo Line knew or should have known of the bases of its common law claims in 1982. Accordingly, Soo Line's claims under breach of contract, trespass, waste and strict liability are time barred.

The Court therefore dismissed Soo Line's common-law claims. The Court denied Carney's motion for summary judgment with regard to Soo Line's CERCLA and MERLA claims. In so doing, however, the Court did not address whether Soo Line's claim is barred by MERLA's repose or limitations provisions.[1]

---

1. Thus, contrary to Soo Line's contention, this Court has never decided the issues presented by Carney's motion.

## ANALYSIS

### I. MERLA Claims for Economic Losses

█ Carney argues Soo Line's claims for economic losses under MERLA are barred under the repose provision set forth in Minn. Stat. § 115B.06 or, in the alternative, under the six-year limitations period set forth in Minn.Stat. § 115B.11. Because the Court finds Soo Line's claims are barred under section 115B.06, it need not reach Carney's statute-of-limitations argument.

Minn.Stat. § 115B.05, subd. 1 sets forth MERLA's private right of action for economic damages and injuries resulting from the release of hazardous substances. This provision provides in relevant part:

[A]ny person who is responsible for the release of a hazardous substance from a facility is strictly liable for the following damages which result from the release or to which the release significantly contributes:

(a) all damages for economic loss.

\*      \*      \*      \*      \*      \*

(b) all damages for death, personal injury, or disease....

*Id.* Section 115B.06 limits such actions as follows:

Section 115B.05 does not apply to any claim for damages arising out of the release of a hazardous substance which was placed or came to be located in or on the facility wholly before July 1, 1983.

The purpose of this section, which was amended in 1985, is "clearly to cut off liability for past actions." *Werlein v. United States,* 746 F.Supp. 887, 910 (D.Minn.1990), *vacated in part on other grounds,* 793 F.Supp. 898 (D.Minn.1992). A separate limitation on liability under section 115B.05 is set forth in section 115B.15:

Sections 115B.01 to 115B.14 apply to any release or threatened release of a hazardous substance occurring on or after July 1, 1983, including any release which began before July 1, 1983, and continued after that date. Sections 115B.01 to 115B.14 do not apply to a release or threatened release which occurred wholly before July 1,

1983, regardless of the date of discovery of any injury or loss caused by the release or threatened released.

Carney argues these MERLA claims are barred under section 115B.06 because any hazardous substance associated with its pole-treating operations, which undisputedly ceased no later than 1973, "was placed or came to be located in or on the facility wholly before July 1, 1983." Soo Line responds that its claim is permitted by section 115B.06 because contamination from Carney's Walker site has continued to migrate to the adjacent Soo Line site since 1983. Hence, according to Soo Line, some of the hazardous substances contaminating the Soo Line site were not placed and did not come to be located there wholly before July 1, 1983.[2]

Although Soo Line's argument is creative, it is unavailing. In *City of Minneapolis v. Arkla, Inc.,* 1993 WL 61827, at \*2 (D.Minn. February 18, 1993), the Court, in a decision by the Honorable James M. Rosenbaum, held, in circumstances similar to the one presented here, that section 115B.06 bars claims where there are allegations of continuing migration of contaminants from one property to another after 1983. *See also Werlein,* 746 F.Supp. at 910 (holding claims relating to hazardous substances that were placed at a site prior to 1983 are barred, despite the fact that these substances allegedly were being thrown into the air and settling elsewhere after 1983). This Court agrees with the *Arkla* court's conclusion and finds that Soo Line's interpretation of section 115B.06 defies the plain meaning of the statute, would render certain language in and portions of MERLA superfluous, and is unreasonable in light of the statute's purpose.

First, Soo Line's interpretation conflates the concept of "release of a hazardous substance" with that of "placed or came to be located in or on the facility." The underground migration of contaminants from the Walker site to the Soo Line site fits squarely within MERLA's definition of a release, which encompasses "any spilling, leaking, pumping, pouring, emitting, emptying, dis-

---

**2.** Soo Line does not dispute that section 115B.06 bars claims for economic losses arising from

contamination originating on the Soo Line site.

charging, injecting, escaping, leaching, dumping, or disposing into the environment which occurred at a point in time or continues to occur." Minn.Stat. § 115B.02, subd. 15. The legislature's inclusion of both the term "release" and the phrase "placed or came to be located in or on" in section 115B.06 makes clear that the latter was not intended to mean the former. Because the two concepts must refer to different events, the Court rejects Soo Line's suggestion that they mean the same thing in this context.

Likewise, if "placed or came to be located in or on" contemplates underground migration of contaminants and therefore can have the same meaning as "release," section 115B.06 would be rendered superfluous because section 115B.15, *supra*, already contains a repose provision for releases or threatened releases of hazardous substances. *See Arkla*, 1993 WL 61827, at *2 (concluding, after reviewing sections 115B.06 and 115B.15, such a reading of the statute would eviscerate section 115B.06). The Court finds no reason why the legislature would have enacted two, independent repose provisions to address the same event (the release of hazardous substances). Soo Line's interpretation of section 115B.06 cannot be reconciled with the repose provision set forth in section 115B.15.[3]

Moreover, Soo Line's position is internally inconsistent because it is premised on a definition of the term "facility" in section 115B.06 that is contrary to the clear meaning of "facility" as it is used in section 115B.05. Under MERLA, a "facility" is, *inter alia,* "[a]ny site or area where a hazardous substance, or a pollutant or contaminant, has been deposited, stored, disposed of, or placed, or otherwise came to be located." Section 115B.02 subd. 5(c). As set forth above, Soo Line seeks recovery under section 115B.05, which provides for damages for the "release of a hazardous substance *from a facility.*" Thus, under 115B.05, a "facility" is a site that is the *source* of the contamination. Soo Line claims the source of the migrating contamination is the Walker site. However, under Soo Line's reading of section 115B.06, "facility" would refer to the site that is the *recipient* of the migrating contaminants: Soo Line argues the contaminants migrated to, and thus were placed or came to be located in or on the facility—the Soo Line site—after 1983. Obviously, "facility" cannot refer to the source site in one provision of MERLA and the recipient site in another.[4] Soo Line's reading of the repose provision therefore is untenable.[5]

Finally, such a strained reading of the statute would defy the intent of the legislature in enacting the current version of section 115B.06. The purpose of the statute was to cut off liability for past actions. *See Arkla*, 1993 WL 61827, at *2; *Werlein,* 746 F.Supp. at 910. If the statute were construed to allow liability any time there is continuing migration of contaminants from one property to another after July 1, 1983, the statute would provide little protection for those whose actions occurred entirely before that date.

Thus, in this context, the only reasonable interpretation of the "placed or came to be located in or on the facility" is that it refers to when Carney placed the hazardous substances or allowed the hazardous substances to be placed on the Walker site. *See Arkla,* 1993 WL 61827, at *2 (holding the relevant event under section 115B.06 is when the defendant placed the hazardous substance on the source site). It is undisputed that Carney placed or put the hazardous substances

---

**3.** Soo Line contends the Court should accept its reading of section 115B.06 because only this interpretation makes the provision "consistent" with section 115B.15. As set forth above, Soo Line's argument proves too much: its interpretation would create a redundancy in MERLA. In addition, there is nothing inconsistent about the legislature incorporating two, independent repose provisions that limit liability under MERLA based on the occurrences of separate events. Simply because Soo Line's claims for economic losses would survive under section 115B.15 does not mandate that these claims also survive under section 115B.06.

**4.** In circumstances in which only one piece of property is at issue—in other words, where there is no allegation of migrating contamination from one site to another—the "source" and "recipient" are the same site.

**5.** Carney argues the two sites at issue in this case should be considered one "facility." Because the Court rejects Soo Line's interpretation even if these sites are separate facilities, the Court need not consider this argument.

on the Walker site no later than 1973. Thus, Soo Line's claim for economic losses and damages under MERLA is barred.

## II. COMMON-LAW CLAIMS

 Soo Line moves the Court to reconsider and reverse Judge Davis's ruling that its common-law claims are barred by the applicable statute of limitations. The Court finds nothing in the record that persuades it to second-guess Judge Davis's determination. Soo Line has cited to no intervening change in the applicable law. Moreover, Soo Line's motion papers do not convince the Court that Judge Davis clearly erred in determining that Soo Line knew or should have known the bases of its common-law claims well before six years in advance of bringing its claim. Whether or not certain Soo Line employees actually knew that the Soo Line site had been contaminated, the site was listed on the CERCLIS inventory in 1982 (under the name "B.J. Carney"), Soo Line received the notice from the MPCA that year, and shortly thereafter, Soo Line was sued and ultimately found liable in litigation involving contamination at a nearby pole-treating facility. These facts support the conclusion that, at minimum, a reasonable person in Soo Line's position should have known of the bases of its claims in the early 1980s. The Court sees no need to revisit other related issues which were addressed before Judge Davis.

## ORDER

Accordingly, based on the above, the submissions of the parties, the arguments of counsel, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendants' motion for partial summary judgment [Docket No. 123] is **GRANTED**. Plaintiff's claims for economic losses and property damages under MERLA are **DISMISSED**.

2. Plaintiff's motion for partial summary judgment [Docket No. 125] is **DENIED**.

3. Plaintiff's motion for reconsideration of a portion of this Court's order dated March 31, 1995 [Docket No. 125] is **DENIED**.